UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA G., <br><br> Plaintiff, <br><br> v. <br><br> MARTIN J. O'MALLEY, <br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 21 CV 5660 <br><br> Magistrate Judge McShain |

### MEMORANDUM OPINION AND ORDER

Plaintiff Lisa G. appeals the Commissioner of Social Security's decision denying her applications for benefits. For the following reasons, plaintiff's motion for summary judgment [10] is denied, defendant's motion for summary judgment [15] is granted, and the denial of benefits is affirmed.[1]

### Background

In January 2020, plaintiff applied for a period of disability, disability insurance benefits, and supplemental security income with an alleged onset date of December 14, 2019. [9-1] 13. The claims were denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*] 13-27, 34-67. The Appeals Council denied review in September 2021, [*id.*] 1-6, making the ALJ's decision the agency's final decision. *See* 20 C.F.R. §§ 404.955 & 404.981. Plaintiff then appealed to this Court [1], and the Court has subject-matter jurisdiction pursuant to 42 U.S.C. § 405(g).[2]

The ALJ reviewed plaintiff's claims in accordance with the Social Security Administration's five-step sequential-evaluation process. At step one, the ALJ found that plaintiff engaged in substantial gainful activity (SGA) during the third quarter of 2020, when she worked for the Chicago Regional Census Center and earned $4,303. [9-1] 15-16. But the ALJ also found that there was a "continuous 12-month period

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [9], which refer to the page numbers in the bottom right corner of each page.
[2] The parties have consented to the exercise of jurisdiction in this case by a United States Magistrate Judge. [5, 7].

during which the claimant did not engage in" SGA, such that plaintiff's performance of SGA in the third quarter of 2020 did not require that her disability claims be denied. [*Id.*] 16.[3] At step two, the ALJ determined that plaintiff had the following severe impairments: morbid obesity, degenerative disc disease of the lumbar spine with radiculopathy, posttraumatic stress disorder, panic disorder, and major depressive disorder. [*Id.*] 16-17. At step three, the ALJ ruled that plaintiff's impairments did not meet or equal the severity of a listed impairment. [*Id.*] 17-19. Before turning to step four, the ALJ determined that plaintiff had the residual functional capacity (RFC) to perform a reduced range of sedentary work, provided that this work was limited to simple and routine tasks, performed at a variable rate with no strict hourly production requirements, did not involve tandem tasks, and required only occasional interactions with the public. [*Id.*] 20-25. At step four, the ALJ concluded that plaintiff could not perform her past relevant work as a chef, janitor, child monitor, sales clerk, or administrative assistant. [*Id.*] 25. At step five, the ALJ found that jobs existed in significant numbers in the national economy that plaintiff could perform, including final assembler (9,200 jobs), polisher (10,100 jobs), and addresser (8,300 jobs). [*Id.*] 26. The ALJ accordingly held that plaintiff was not disabled.

## Legal Standard

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021) (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)). "When reviewing a disability decision for substantial evidence, we will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's determination so long as substantial evidence supports it." *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (internal quotation marks and brackets omitted).

---

[3] "[I]f there is no continuous twelve-month period without substantial gainful activity, the claimant is not disabled." *Heiberger v. Berryhill*, Case No. 17 C 6858, 2018 WL 3729323, at *2 (N.D. Ill. Aug. 6, 2018)  As the Commissioner notes, it is unclear how the ALJ determined that there was a continuous 12-month period during which plaintiff did not perform SGA. *See* [16] 2-3. The alleged disability period began in December 2019, and the ALJ found that plaintiff began performing SGA only seven months later, in July, August, and September 2020. Thereafter, only seven months elapsed before the ALJ issued his decision on April 28, 2021. Because the Court finds that the ALJ's decision is otherwise supported by substantial evidence, the Court need not address the Commissioner's argument that plaintiff's SGA in the third quarter of 2020 precludes a finding that plaintiff was disabled.

**Discussion**

I.  **Plaintiff's Obesity and Urinary Incontinence**

Plaintiff first argues that the ALJ failed to account for her obesity and urinary incontinence in determining her physical RFC. [10] 7-9. Plaintiff contends that the ALJ included only a "boilerplate and perfunctory conclusion about [her] obesity." [*Id.*] 8. Plaintiff then claims that the ALJ failed to consider the effects of her urinary incontinence on her ability to stay on task while at work. [*Id.*] 9-10. The Court rejects both arguments.

A.  **Obesity**

"Obesity is not a standalone disabling impairment, and an ALJ need only consider its impact when evaluating the severity of other impairments." *Silvia P. v. O'Malley*, No. 23 CV 1450, 2024 WL 3455021, at *8 (N.D. Ill. July 18, 2024). "Obesity cannot be ignored because the combined effects of obesity with other impairments may be greater than might be expected without obesity." *Brown v. Colvin*, 845 F.3d 247, 251 (7th Cir. 2016) (internal quotation marks and brackets omitted).

Here, the ALJ adequately considered plaintiff's obesity in determining her physical RFC. At step two, the ALJ recognized that plaintiff's most recent medical evaluation reflected that she was 5 feet, 4 inches tall and weighed 279 pounds, which meant that her BMI was 47.2. [9-1] 16-17; *see Goins v. Colvin*, 764 F.3d 677, 681 (7th Cir. 2014) (BMI in excess of 40 indicates morbid obesity). The ALJ therefore found that plaintiff was obese, and that her obesity was severe because "it imposes significant limitations on its own and in combination with her other impairments." [*Id.*] 17. To support the RFC determination, the ALJ cited multiple treatment notes reflecting plaintiff's obesity, *see* [*id.*] 22-23, but also indicating that she had a normal gait, normal range of motion in her hips and extremities, normal motor strength in her extremities, and normal coordination, [*id.*] 23. The RFC determination also barred plaintiff from climbing ladders, ropes, and scaffolds; limited her to only occasional climbing ramps and stairs, crouching, and stooping; and required that she avoid all exposure to unprotected heights. *See Joseph M. v. Saul*, No. 18 C 5182, 2019 WL 6918281, at *12 (N.D. Ill. Dec. 19, 2019) (inclusion of such restrictions in RFC demonstrated that ALJ accounted for claimant's obesity). Finally, plaintiff offers no evidence to demonstrate that her obesity exacerbates her other impairments and that a limitation to a reduced range of sedentary work was insufficient to account for her obesity. "Because an ALJ's failure to explicitly consider an applicant's obesity is harmless if the applicant did not explain how the applicant's obesity hampers the applicant's ability to work, any lack of [more explicit] consideration on the ALJ's part is excused by Plaintiff's own lack of evidence demonstrating the impact of obesity on other impairments and h[er] ability to work." *Marvin G. v. Kijakazi*, Case No. 20-cv-50362, 2023 WL 8544085, at *5 (N.D. Ill. Dec. 11, 2023) (internal quotation marks

and brackets omitted). The ALJ's handling of plaintiff's obesity does not require a remand.

### B. Incontinence

Likewise, the ALJ's handling of plaintiff's urinary incontinence, which the ALJ found to be a non-severe impairment, satisfied "the most minimal of articulation requirements" that applied in this case.[4] *Warnell*, 97 F.4th at 1053. The ALJ recognized that plaintiff told her treaters that she experienced urinary incontinence, but he determined that "the medical record does not adequately support" that plaintiff's incontinence issues "would more than minimally affect the claimant's ability to perform basic work." [9-1] 17. In support, the ALJ pointed to a February 2019 treatment note documenting that plaintiff "has no trouble releasing her urine or holding it throughout the day" but did have difficulty "get[ting] to the bathroom fast enough." [9-1] 483. He also relied on a February 2020 treatment note reflecting that plaintiff's urinary incontinence was a "chronic issue for her and has not acutely worsened" over time. [*Id.*] 579. Other treatment notes reflected that plaintiff had repeatedly denied "having urinary incontinence where she has no control of her urine[.]" [*Id.*] 515; *see also* [*id.*] 504-05, 527; [9-2] 715, 741. Finally, plaintiff's testimony that "anything that requires . . . carrying anything heavy or walking for a long period of time . . . causes me to have to urinate more frequently than usual" had no support in the medical record and was clearly contradicted by plaintiff's own statements to her treaters. To the extent that this claim was credible, the ALJ's RFC determination accounted for it by restricting plaintiff to sedentary work that required only occasional lifting of up to 10 pounds, did not require her to stand or walk for more than two hours during the workday, and that afforded her normal breaks. *See* [9-1] 20. Taken together, the ALJ's decision not to include any further restriction in the RFC for plaintiff's urinary incontinence has substantial evidentiary support.

## II. Mental RFC

Plaintiff next argues that the ALJ erred in finding that she is mentally capable of sustaining the concentration, interactive, and on-task requirements of full-time work." [10] 10.

A claimant's RFC is the maximum work she can perform despite her limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2. "An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and treatment." *Sarah O. v. O'Malley*,

---

[4] Plaintiff suggests that the ALJ erred in finding that her urinary incontinence was a non-severe impairment, but she ultimately–and correctly–acknowledges that such an error would have been harmless. *See* [10] 10; *see also Marilyn G. v. Kijakazi*, No. 22 C 5096, 2023 WL 4545190, at *5 (N.D. Ill. July 14, 2023).

4

Case No. 3:23-cv-50045, 2024 WL 1254536, at *2 (N.D. Ill. Mar. 25, 2024). "Essentially, an ALJ's RFC analysis must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (internal quotation marks omitted).

The Court concludes that substantial evidence supports the ALJ's mental RFC determination. First, as the ALJ noted, plaintiff denied, in her initial application for benefits, that any mental impairment limited her ability to work. *See* [9-1] 256. Second, the ALJ found that plaintiff received minimal treatment for her mental impairments during the alleged disability period, and that this treatment improved her conditions. Plaintiff presented for an initial psychiatric assessment in December 2020–a year after the disability period began–with Dr. Josiah Miller and was diagnosed with posttraumatic stress disorder and major depressive disorder. [*Id.*] 25. Treatment notes from February 2021 demonstrated that plaintiff "was slowly and steadily making progress." [*Id.*]. A March 2021 treatment note similarly reflected that plaintiff "expressed a perspective change over time and was beginning to value maintaining her own well-being and sense of peace regardless of how others around her might be acting." [*Id.*]. Furthermore, mental status examinations demonstrated that plaintiff's appearance, behavior, thought process, perception, and insight were within normal limits, and plaintiff had an appropriate affect to situation. [*Id.*]. Third, the ALJ partly credited the opinion of a state agency reviewer, Dr. Gayle Williamson, that plaintiff had only moderate or mild mental limitations because this opinion was "based upon a review of the medical evidence and supported by the claimant's lack of alleged limitations based upon mental impairments at the initial level and the findings upon psychological consultative evaluation." [*Id.*] 23-24.[5] Finally, the ALJ's RFC determination rests in significant part on his rejection of the opinions of plaintiff's treaters as unsupported and otherwise inconsistent with the record. As the Court explains in Section III.B below, the ALJ reasonably rejected these opinions.

In the face of this substantial body of evidence, none of plaintiff's specific challenges to the mental RFC has merit.

First, in finding that plaintiff had only a moderate limitation in interacting with others, the ALJ did not, as plaintiff erroneously claims, *see* [10] 10, rely solely on the fact that plaintiff had never been fired based on an inability to interact appropriately with coworkers. Rather, the ALJ also relied on evidence that plaintiff shops for groceries once a week, visits the library twice a week, and has no problems getting along with family, friends, and neighbors. [9-1] 18. Given plaintiff's significant work history, moreover, the fact that she had never been fired "because of problems getting along with other people" was obviously probative of the degree to which she could interact with others in the workspace. Finally, the ALJ expressly

---

[5] The ALJ rejected Dr. Williamson's opinion that plaintiff had a moderate limitation in understanding, remembering, and applying information, concluding that plaintiff's limitation in this area was only mild. [9-1] 24.

5

considered the evidence cited by plaintiff: that her "mannerisms were very serious and tense at first, and then [plaintiff] broke down into tears and was weeping" during a psychological consultative examination with Dr. Craig Boyer. *See* [*id.*] 18-19; *see also* [9-2] 610-13 (Dr. Boyer's report). Notably, Dr. Boyer did not translate his observations during the evaluation into specific work-related limitations, *see* [9-2] 611-13, and plaintiff does not explain why this piece of evidence required the ALJ to find that her ability to interact with others was more than moderately limited.

Second, plaintiff insists that the ALJ relied on "some of the most basic, sporadic activities" to "cancel out [plaintiff's] failure at simple math" when he assessed plaintiff's ability to concentrate, persist, and maintain pace (CPP). [10] 11. But plaintiff presents a distorted and incomplete picture of the ALJ's analysis. The ALJ permissibly considered that plaintiff could pay bills, count change, handle a savings account, and use a checkbook and money orders. [9-1] 19. The ALJ also observed that plaintiff was practicing Spanish, was learning to cook vegan, and watched YouTube. Furthermore, the ALJ relied on Dr. Boyer's finding that plaintiff had "an intact thought process with no history of delusions or hallucinations." [*Id.*]. At no point did the ALJ suggest that plaintiff had no or only minimal CPP limitations *because* her ability to perform these activities "canceled out" her poor math skills, which the ALJ specifically discussed. *See* [*id.*] (noting that plaintiffs "math skills were off, and she failed at the subtraction and multiplication problems"). Again, plaintiff does not explain why plaintiff's poor math skills compelled the ALJ to find that her CPP limitations were any greater than moderate.

Third, the ALJ's decision refutes plaintiff's claim that, in addressing her adaptive limitations, the ALJ "glossed over the fact that Plaintiff lives in a car." [10] 11. The ALJ recognized that fact but explained why plaintiff had only a mild limitation in this area:

> The claimant is able to care for her personal hygiene and grooming needs with some physical difficulties. She claims that she does not prepare her own meals, but she buys precooked foods. She claims that she does not do any household chores because she lives in a car, but she does her own laundry. The claimant is able to go out alone and drive. She claims that she is unable to handle stress, but she is able to handle changes in routine [Exhibits 3E and 11E]. The claimant informed Dr. Boyer that she lived alone and managed her own funds. She did minimal meal preparation and her own laundry, shopped, and managed her medications. Her mood was sad. She responded well to questions of judgment and insight [Exhibit 8F]. For these reasons and the reasons detailed above, the claimant is found to have no more than mild limitations in adapting or managing oneself.

[9-1] 19.

6

Finally, the Court rejects plaintiff's argument that the ALJ failed to include an adequate narrative discussion to justify the mental RFC determination. As just seen, the ALJ discussed at length and in detail the evidence bearing on plaintiff's mental limitations and appropriately relied on the evidence that plaintiff's sparse and conservative treatment improved her conditions. Plaintiff's attempts to nitpick the decision notwithstanding, the Court finds that the ALJ satisfied the minimal articulation requirement that applied here. *See Warnell*, 97 F.4th at 1053.

### III. Subjective Allegations and Opinion Evidence

Finally, plaintiff contends that the ALJ did not properly articulate his reasons for rejecting her subjective symptom allegations and the opinion evidence from three of her treaters. [10] 14-15. Neither contention has merit.

#### A. Subjective Symptom Determination

"When assessing a claimant's subjective symptom allegations, an ALJ must consider several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations." *Charles B. v. Saul*, No. 19 C 1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020). "[T]he ALJ must explain her subjective symptom evaluation in such a way that allows the Court to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Id.* (internal quotation marks and brackets omitted). "The Court will overturn an ALJ's evaluation of a claimant's subjective symptom allegations only if it is patently wrong." *Id.* (internal quotation marks omitted). "[F]laws in the ALJ's reasoning are not enough to undermine the ALJ's decision that [a claimant] was exaggerating her symptoms. Not all of the ALJ's reasons must be valid as long as *enough* of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original). The Seventh Circuit has stated that it "would not reverse the credibility determination as long as the ALJ provided at least one reason to support the finding." *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021).

Plaintiff argues that the ALJ impermissibly relied on evidence that she received unemployment benefits in 2020 to find her allegations incredible. *See* [10] 15. The Seventh Circuit has explained that "[t]he case law of this circuit clearly permits the ALJ to give some consideration" to a claimant's receipt of unemployment benefits "when assessing his credibility." *Scrogham v. Colvin*, 765 F.3d 685, 699 (7th Cir. 2014). But an ALJ's handling of this issue must be undertaken "with significant care and circumspection" and with "careful[ ] consider[ation]" of "[a]ll of the surrounding facts." *Id.* Plaintiff contends that the ALJ's decision lacks the nuance required by *Scrogham* because the ALJ concluded, without further explanation, that "[h]olding herself out as ready, willing, and able to work contradicts the claimant's allegations of disability." [9-1] 21.

7

The Court cannot accept this argument. Not only was this a case where plaintiff applied for and received disability benefits during the second, third, and fourth quarters of 2020, *see* [*id.*] 248, but this is also a case where plaintiff actually worked–and earned income that exceeded SGA levels–for three months during a relatively short period of disability. *See Lambert v. Berryhill*, 896 F.3d 768, 778 (7th Cir. 2019) ("unemployment benefits may be relevant if a claimant has represented to the State that he is able to work *during* the period for which he has applied for federal disability benefits") (emphasis in original); *Joseph M. v. Kijakazi*, No. 23 C 88, 2023 WL 7167523, at *9 (N.D. Ill. Oct. 31, 2023) (ALJ permissibly discredited claimant's subjective allegations by observing that "a claim for and continuing receipt of unemployment insurance benefits for which an individual must hold themselves out as ready, willing, and able to accept employment if available, is inconsistent with a claim for Social Security disability benefits for which an individual must hold themselves out as being unable to perform any substantial gainful activity"). Plaintiff argues that the ALJ needed to be more careful in weighing her receipt of unemployment benefits because, "[g]iven the interplay among [her] various impairments," it was "understandable that she may have thought, at least at the outset, that she would be able to return to work." [10] 15. This argument falls flat, however, because plaintiff received unemployment benefits, not at the beginning of the disability period, when the scope of her alleged disability was purportedly unclear, but well into the middle and second half of the period. Plaintiff also fails to cite any evidence suggesting that her "various impairments" appreciably worsened around the time that she stopped receiving unemployment benefits. *Compare Scrogham*, 765 F.3d at 699 ("In the case of a progressive disease, it is especially possible that an applicant might, at the early stages of the disease's manifestation, be unsure of the limits of his physical capabilities and only later determine that his inability to find work was due to the fact that the physical toll taken by the disease was greater than he had thought."). The ALJ did not patently err by relying on plaintiff's receipt of unemployment benefits in weighing the credibility of her allegations.

Even if the ALJ had erred, the Court would still affirm because the ALJ gave other valid reasons for concluding that plaintiff's allegations were not credible. *See Schrank*, 843 F. App'x at 789; *Halsell*, 357 F. App'x at 722. The ALJ noted that plaintiff had only an "intermittent and conservative treatment history," her physical examinations demonstrated "generally normal objective findings," her condition improved with treatment, and she engaged in "varied activities of daily living, including living alone, caring for herself," and working for three months during the alleged disability period. [9-1] 21. All of these were appropriate factors for the ALJ to consider in assessing the credibility of plaintiff's allegations. *See Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (ALJ appropriately considered "conservative course of treatment"); *Anders v. Saul*, 860 F. App'x 428, 434 (7th Cir. 2021) (ALJ may consider whether objective evidence supports claimant's allegations); *Jeanette C. v. O'Malley*,

8

No. 22-cv-5315, 2024 WL 2292833, at *5 (N.D. Ill. May 21, 2024) (ALJ was entitled to consider whether claimant's condition responded to or improved with treatment).

For these reasons, the ALJ's subjective symptom determination was not patently erroneous.

### B. Opinion Evidence

An ALJ "will not defer or give any specific weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from a [claimant's] medical sources." 20 C.F.R. § 404.1520c(a). Instead, the ALJ will explain "how persuasive [he] find[s] all of the medical opinions and all of the prior administrative medical findings[.]" 20 C.F.R. § 404.1520c(b). In deciding how persuasive a given opinion or finding is, the ALJ considers "supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict" the opinion or finding. *Victor F. v. Kijakazi*, No. 22 C 1451, 2023 WL 2429357, at *3 (N.D. Ill. Mar. 9, 2023). "Supportability and consistency are the two most important factors." *Id*. "An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors." *Id*. "[A] detailed analysis is not required," but the ALJ must "give a reviewing court the bridge to connect the outcome to the record." *Id.* (internal quotation marks and brackets omitted).

#### 1. Dr. Sheng

Plaintiff argues that the ALJ erred in rejecting the opinion of her orthopedist, Dr. Alexander Sheng, that plaintiff could walk no more than one block and that she could not sit or stand for more than 15 minutes at a time. According to plaintiff, the ALJ rejected that opinion solely because Dr. Sheng had seen plaintiff only twice. [10] 15. This argument lacks merit. To begin, it was appropriate for the ALJ to consider the relatively short length of plaintiff's treatment relationship with Dr. Sheng and the frequency of Sheng's examinations. *See* 20 C.F.R. § 404.1520c(3)(i)-(ii). Moreover, the ALJ explained that Dr. Sheng's examination findings did not support the extreme limitations he identified. *See* [9-1] 22 ("In addition, the doctor's opinion is inconsistent with findings upon physical examinations, including a normal gait, negative Romberg, normal coordination, full range of motion, and normal motor strength and sensation."). This was an appropriate basis to discount Dr. Sheng's opinion. *See Elaina M. v. Kijakazi*, No. 22 CV 6279, 2023 WL 4707557, at *5-6 (N.D. Ill. July, 24 2023) (ALJ did not err by giving physician's opinion "little value" where his "treatment notes don't paint nearly as dire a picture of the plaintiff as his opinion").

Plaintiff also suggests it was inconsistent for the ALJ to reject Dr. Sheng's opinion based on the limited nature of the treatment relationship but to credit the opinion of the state agency reviewers who never examined plaintiff. *See* [10] 15. The

9

fact that the agency reviewers did not examine plaintiff is immaterial, however. Applicable regulations "consider state agency psychologists such as [those who reviewed plaintiff's file] to be highly qualified and experts in Social Security disability evaluation" even though they do not themselves examine claimants. *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022) (internal quotation marks omitted).

### 2. Counselor Fuller

The ALJ rejected the opinion of plaintiff's counselor, LaShonda Fuller, as unsupported. [9-1] 24. Plaintiff argues that this determination was improper because the ALJ did not address Fuller's explanation that she was "unable to provide detailed treatment notes" because those notes were "stored in an off-site storage facility." [9-3] 1250; *see also* [10] 15. This argument has no merit. "An expert who supplies nothing but a bottom line supplies nothing of value to the judicial process," *Marilyn C. v. Kijakazi*, No. 20 CV 1816, 2023 WL 1862988, at *12 (N.D. Ill. Feb. 9, 2023), and that is essentially what Fuller offered. Accordingly, with no evidence detailing the "psychological or cognitive testing" that Fuller performed, no reports from plaintiff's "mental status examinations," no discussion of plaintiff's "symptoms," and no account of plaintiff's "progress with treatment," it was more than reasonable for the ALJ to find that Fuller's opinion was "not well-supported by the record." [9-1] 24. Furthermore, it was plaintiff's burden to prove that she was disabled, but neither she nor Fuller explained why Fuller's records had not been obtained and made part of the record. In any event, the ALJ also found that Fuller's opinion–that plaintiff cannot function independent outside of the home, work closely with others for thirty percent of the workday, or maintain extended attention or concentration for twenty percent of the workday, *see* [9-3] 1246-49–was "inconsistent with the claimant's lack of allegations, her past work history, and her apparent improvement with treatment [*Id.*]. All of this supplied a substantial evidentiary basis to reject Fuller's opinion.

### 3. Dr. Miller

Finally, plaintiff faults the ALJ for not recognizing that Fuller's opinion was "remarkably consistent" with the opinion of plaintiff's psychotherapist, Dr. Miller. [10] 15. In February 2021, Dr. Miller opined that plaintiff's mental impairments would prevent her from working between twenty and thirty percent of the workday. *See* [9-4] 1495-98. But the ALJ concluded that the extreme limitations identified by Dr. Miller, who treated plaintiff for barely two months, were not supported by his own treatment notes and were otherwise inconsistent with plaintiff's abilities to perform ADLs, her work history (including work during the alleged disability period), and other objective evidence in the record. *See* [9-1] 24-25. Plaintiff does not challenge this finding and has thus forfeited any argument that the ALJ erred in weighing Dr. Miller's opinion. *See John K. MacIver Inst. for Pub. Policy, Inc. v. Evers*, 994 F.3d 602, 614 (7th Cir. 2021) ("A party who does not sufficiently develop an issue or argument forfeits it."). Finally, the fact that both Fuller's and Dr. Miller's opinions were

10

consistent is irrelevant given the ALJ's determination that neither opinion was credible.

## Conclusion

Plaintiff's motion for summary judgment [10] is denied, defendant's motion for summary judgment [15] is granted, and the Commissioner of Social Security's decision denying the applications for benefits is affirmed.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: October 28, 2024**